IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
_____
                            :
FOOD SCIENCES CORPORATION   :      HON. JEROME B. SIMANDLE
d/b/a ROBARD CORPORATION,   :
                            :      Civil No. 09-1798 (JBS)
          Plaintiff,        :
                            :
     v.                     :           **OPINION**
                            :
WILLIAM M. NAGLER,          :
                            :
          Defendant.        :
                            :
_____
```

APPEARANCES:

Salvatore Guerriero, Esq.
Manny D. Pokotilow, Esq.
CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.
1635 Market Street
11th Floor - Seven Penn Center
Philadelphia, PA 19103
     Attorneys for Plaintiff

William D. Sanders, Esq.
Patrick M. Beattie, Esq.
MCGIVNEY & KLUGER, P.C.
23 Vreeland Road
Suite 220
Florham Park, NJ 07932

     -and-

William H. Horton, Esq.
Elizabeth A. Favaro, Esq.
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road
10th Floor - Columbia Center
Troy, MI 48084
     Attorneys for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This intellectual property matter is before the Court on the motion of Defendant William M. Nagler to dismiss for lack of personal jurisdiction and for failure to state a claim [Docket Item 18].  Defendant also moves, in the alternative, to transfer the case to the US District Court for the Eastern District of Michigan.  [Id.]  For the reasons set forth below, the Court will exercise jurisdiction and decline to transfer venue, but dismiss the case for failure to state a claim without prejudice to Plaintiff's opportunity to seek leave to file a curative amendment, consistent with this Opinion, to provide a plausible basis for its claims.

## II.   BACKGROUND

Plaintiff, Food Sciences Corporation doing business as Robard Corporation, brings this lawsuit based on Defendant's practice of selling NUTRIMED dietary food supplements through his website (Dietresults.com) without Plaintiff's authorization. Plaintiff maintains that the sale and administration of NUTRIMED supplements are carefully controlled; they are sold exclusively to medical professionals, who in turn, administer and supervise

2

diet programs and monitor patients using the products.  For this
reason, Plaintiff does not sell NUTRIMED dietary food supplements
over the Internet.  Plaintiff argues that Defendant's sale of
NUTRIMED products through its website "is likely to cause
confusion and deception among customers regarding Robard's
sponsorship or approval of said products."  (Compl. ¶ 20.)
Plaintiff's claims are brought before the Court under 15 U.S.C. §
1114(1) (trademark infringement), § 1125(a) (false designation of
origin), and unfair competition under New Jersey law.

Plaintiff is a Nevada corporation with its principal place
of business in New Jersey.  Defendant resides in the State of
Michigan with a residence and principal place of business in
Livonia, MI.  Defendant argues that a handful of sales of
products to customers in New Jersey through an interactive
website is an insufficient basis for personal jurisdiction.
Defendant also argues that application of the "first sale"
doctrine forbids this action because the products re-sold by
Defendant were genuine NUTRIMED products.  Finally, Defendant
argues in the alternative to dismissal that the case should be
transferred to Michigan because Defendant resides in that
district and it is more convenient for him as the financially
weaker party.


**III. DISCUSSION**

### A.   Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits.  See Fed. R. Civ. P. 4(e).  Because New Jersey law permits the exercise of jurisdiction to the extent allowed by the Constitution, the question is whether this Court can exercise jurisdiction without offending the Due Process Clause of the Fifth Amendment.  Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

The Due Process clause requires that Plaintiff establish that the Defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945); Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002).  A plaintiff must show either "that the cause of action arose from the defendant's forum-related activities (specific jurisdiction) or that the defendant has 'continuous and systematic' contacts with the forum state (general jurisdiction)." Mellon Bank (EAST) v. DiVeronica Bros., 983 F.2d 551, 554 (3d Cir. 1993).

In this case, Plaintiff argues that this Court has specific jurisdiction.  Because "the mere operation of a commercially interactive web site should not subject the operator to

4

jurisdiction anywhere in the world," <u>Toys "R" Us, Inc. v. Step Two</u>, 318 F.3d 446, 454 (3d Cir. 2003), the exercise of specific jurisdiction in the context of an internet business depends on "the nature and quality of commercial activity that the defendant conducts over the Internet." <u>Spuglio v. Cabaret Lounge</u>, 344 Fed. App'x 724, 725 (3d Cir. 2009) (internal quotation and citations omitted).  The Third Circuit Court of Appeals has held that a district court must determine where the website's commercial activity falls on the sliding scale set forth in <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997). <u>Spuglio</u>, 344 Fed. App'x at 725.  The court in <u>Spuglio</u> summarized the sliding scale as follows:

> On one end of the sliding scale are defendants who actively do business over the Internet.  An example would be one who 'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet.' For such 'active' defendants, the exercise of personal jurisdiction is proper.  On the other end of the scale are those who merely make information available on the Internet.  The exercise of personal jurisdiction over such 'passive' defendants is improper.

<u>Id.</u> (quoting <u>Zippo</u>, 952 F.Supp. at 1124.)  Additionally, "[t]here is also a middle ground between active and passive websites.  In the cases that fall in the middle, the proper exercise of personal jurisdiction 'is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.'" <u>Id.</u> at 725 n.2

(quoting Zippo, 952 F.Supp. at 1124).

Active websites featuring online purchasing, or middle ground websites that are sufficiently interactive, make the exercise of jurisdiction proper because they involve an entity that intentionally reaches beyond its boundaries to conduct business with foreign residents.  Zippo, 952 F.Supp. at 1124 (citing Burger King Corp. v. Rudzewicz 471 U.S. 462, 475 (1985)). In these cases, the touchstone remains this kind of purposeful availment.  The Third Circuit Court of Appeals examined this issue at length in Toys "R" Us, Inc. v. Step Two, 318 F.3d 446 (3d Cir. 2003).  The court held that in order for a forum to have jurisdiction over a defendant, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts."  318 F.3d at 454.  This requirement was not met in Toys because there was no targeting and insufficient proof of knowing interaction. The defendant's website was entirely in Spanish, with prices in pesetas or Euros; the website indicated that merchandise could only be shipped to addresses within Spain, with none of the portions of the site designed to accommodate addresses within the United States; the only documented sales to persons in the United States were the two contacts orchestrated by plaintiff; and the

6

items were shipped to Spanish addresses.  <u>Id.</u> at 454.

Distinguishing <u>Zippo</u>, the <u>Toys</u> court noted:

> In <u>Zippo</u>, the defendant had purposefully availed itself
> of doing business in Pennsylvania when it repeatedly and
> consciously chose to process Pennsylvania residents
> applications and to assign them passwords, knowing that
> the contacts would result in business relationships with
> Pennsylvania customers.  The court summarized the pivotal
> importance of intentionality as follows: "When a
> defendant makes a conscious choice to conduct business
> with the residents of a forum state, it has clear notice
> that it is subject to suit there.  If the defendant had
> not wanted to be amenable to jurisdiction in Pennsylvania
> it could have chosen not to sell its services to
> Pennsylvania residents.

<u>Id.</u> at 452 (quoting <u>Zippo</u>, 952 F. Supp. at 1126-27).

In the present case, the parties acknowledge that the cause
of action arises, if at all, out of Defendant's contacts with New
Jersey purchasers.  The Complaint alleges that Defendant's
website "directly targeted" New Jersey.  (Compl. ¶ 5.)  Other
than the fact that the website is designed to be used by anyone
in the United States to order products, (Def.'s Br. Supp. Motion
to Dismiss, Ex-A, ¶5), there are no other allegations to support
the claim that the website targets New Jersey.  Nor is there any
allegation that Defendant has any contacts with the state other
than the sales in question.  Therefore, the focus is on whether
Defendant "knowingly interact[ed] with residents of the forum
state via its web site."  318 F.3d at 454.  If, as in <u>Toys</u>,
Defendant's sales to New Jersey fortuitous and unknowing, then
personal jurisdiction is improper.  If, as in <u>Zippo</u>, the sales

were intentional and knowing, then personal jurisdiction is proper.

Defendant argues that the volume of sales brings the case closer to the facts of Toys.  Defendant processed a total of only six orders from New Jersey out of a total of 561 sales, with two of them ordered by the same customer in two different years, and two of them made by Plaintiff.  (Id. Exs. 1-2, D.)  However, as Zippo noted, "the Supreme Court has made clear that even a single contact can be sufficient."  Id. at 1127 (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).  The point of assessing the number of transactions is to determine whether the business had knowledge of its interaction with residents of the foreign forum, or whether a few stray transactions happened to involve residents of the subject forum.  In the absence of any other indication that the website owner knew of any transactions, the sheer number of transactions involving the subject forum can be compelling evidence.  But that does not make the converse true, that a small number of sales is evidence of lack of intention. The question in all cases is whether the defendant deliberately made sales to the forum state.

In Toys, the sales occurred in the context of a website that not only did not target the U.S., but it was also in another language, charged prices in another currency, and did not permit shipping to U.S. by its design.  Toys, 318 F.3d at 450.  That

8

some transactions could be initiated by plaintiff for the purposes of bringing suit was not sufficient for jurisdiction. Critically, the only sales involving the United States were shipped to plaintiff's employee in Spain and then forwarded to New Jersey by that employee.  Id.; see also Zippo, 952 F. Supp. at 1126 ("Dot Com's contacts with Pennsylvania would be fortuitous within the meaning of World-Wide Volkswagen if it had no Pennsylvania subscribers and an Ohio subscriber forwarded a copy of a file he obtained from Dot Com to a friend in Pennsylvania or an Ohio subscriber brought his computer along on a trip to Pennsylvania and used it to access Dot Com's service.").  Under those circumstances, a minimal number of sales was insufficient.

However, where those circumstances are not present, a small number of direct sales to residents of the forum resulting from the ordinary operation of the website can be sufficient for jurisdiction.  In L'Athene, Inc. v. EarthSpring LLC, 570 F. Supp. 2d 588 (D. Del. 2008), the district court considered a website that was accessible in the forum, received orders and payments from customers in the forum and shipped products there representing less than 1% of total sales.  The court concluded that "the sales are not the kind of fortuitous, random, and attenuated contacts the Supreme Court has held insufficient to warrant the exercise of jurisdiction."  Id. at 593 (internal

citation and quotation omitted).  Unlike in Toys, in L'Athene and
Zippo, at least some of the sales were consummated using the
website as it was designed by customers other than the plaintiff,
and in L'Athene the orders were shipped to the forum state.

The present case involves none of the factors present in
Toys that undermined the inference of intentionality arising from
repeated sales of goods to residents in a particular
jurisdiction.  In an attempt to overcome the evidence of
purposeful availment arising from the multiple shipments over
time to New Jersey, Defendant presents an affidavit stating that
he had "little, if any, knowledge" that any sales were made to
New Jersey residents until his office manager reviewed his
business records for the last three years in connection with this
lawsuit.  (Def.'s Br. Supp. Motion to Dismiss, Ex-A, ¶ 7.)  This
ambiguous declaration that Defendant has "little, if any,
knowledge" does not sufficiently undermine the inference of
intentionality, since it is unclear what it would mean to have a
"little" knowledge of the direct sale of products to New Jersey
residents that are shipped to New Jersey addresses.

But even if the Court were to charitably interpret
Defendant's statement as disavowing personal knowledge of where
the products were shipped, this implicit argument that if he
personally had insufficient knowledge of the contacts with the
forum, he cannot be subject to the Court's jurisdiction, is not

accompanied by any legal precedent.  Whether as an alter-ego of his business identity or by imputation of his employee's knowledge, Defendant has constructive knowledge of the products being sold to New Jersey residents.  See Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) ("For purposes of personal jurisdiction, the actions of an agent are attributable to the principal."); 3 Am. Jur. 2d Agency § 275; Restatement (Third) Of Agency § 5.03 (2006).  A business cannot insulate itself from the exercise of personal jurisdiction by maintaining a separation between the proprietor and the employees conducting business on his or her behalf.  Defendant operated a website designed to solicit purchases from anywhere in the United States, and created a business structure to fill those orders.  When the structure he set up made repeated sales to New Jersey, he should reasonably have expected that he could be haled into Court in New Jersey, and yet continued processing orders from New Jersey anyway.

To the extent that compliance with "traditional notions of fair play and substantial justice" is a separate test from the internet commercial activity test discussed above, this case satisfies it.  Indeed, the court's discussion of the issue in Zippo could apply equally to this case with a few substituted words:

> There can be no question that [this forum] has a strong
> interest in adjudicating disputes involving the alleged
> infringement of trademarks owned by resident
> corporations.  We must also give due regard to the

11

> Plaintiff's choice to seek relief in [this forum]. These concerns outweigh the burden created by forcing the Defendant to defend the suit in [this forum], especially when [Defendant] consciously chose to conduct business in [this forum], pursuing profits from the actions that are now in question.   The Due Process Clause is not a 'territorial shield to interstate obligations that have been voluntarily assumed.' Burger King, 471 U.S. at 474, 105 S.Ct. at 2183.

Zippo, 952 F. Supp. at 1127.  Defendant is subject to the jurisdiction of this Court because his conduct satisfies the requirements of minimum contact with the forum and comports with traditional notions of fair play and substantial justice.  The motion to dismiss for lack of personal jurisdiction will be denied.


     **B.   Transfer of Venue**

     28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a).  The moving party bears the burden of establishing the need for a transfer.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)

     The Court must consider all relevant public and private interests, and not just the three enumerated factors in § 1404(a).  Jumara, 55 F.3d at 879.  The private interests include (1) the preferences of the parties; (2) where the claim arose;

(3) the convenience of the parties as indicated by their relative physical and financial condition; (4) the extent to which any witnesses might not be available for trial in the chosen forum; (5) the extent to which books and records could not be produced in the chosen forum.  Id. at 879.  The public interests include: (1) the enforceability of the judgment; (2) practical considerations of the trial; (3) court congestion; (4) local interest in deciding local controversies; (5) public policies of the fora; (6) and familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879-80 (citations omitted).  Ultimately, "the plaintiff's choice of forum will not be disturbed unless the balance of interest tilts strongly in favor of a transfer."  Reed, 166 F. Supp. 2d at 1057 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)).

Plaintiff does not dispute that this case could have been brought in Defendant's desired forum, so the question is limited to an examination of the relevant Jumara factors.

None of the public factors undermine Plaintiff's choice of forum, and Defendant does not allege that any witnesses or business records would be unavailable in this forum.  In weighing the private factors, the Court acknowledge that because Defendant resides in Michigan and operates his business there, transferring this lawsuit to Michigan would make it easier and more convenient for Defendant and his witnesses to appear in court for the

13

proceedings.  However, Plaintiff has its principal place of business in New Jersey, and according to Plaintiff, all of its witnesses and evidence are in New Jersey.  When a plaintiff chooses his home forum, the choice is entitled to even greater deference than usual.  Sandvik, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989).

Defendant's only significant argument on the motion to transfer is to allege financial disparity between himself and Plaintiff.  It may be true that Plaintiff is financially more capable of litigating this case in a foreign forum than Defendant, but the Court finds that mere allegation of unquantified financial disparity, standing alone, is insufficient to upset Plaintiff's choice of its home forum, where some of the operative facts of the case occurred.[1]

Because the only factor weighing in favor of Defendant for transfer of venue is the disparity in financial resources between the parties, the Court finds that there is an insufficient basis upon which to transfer the case to Defendant's preferred venue.

_____

[1]  In this trademark infringement case, at least some of the operative events occurred in New Jersey.  See One World Botanicals Ltd. v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 326-27 (D.N.J. 1997) (analyzing the locus of operative facts in an infringement case).  See also Cottman Transmission Sys. Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994); Tefal, S.A. v. Products Int'l Co., 529 F.2d 495, 496 n. 1 (3d Cir. 1976); Indianapolis Colts v. Metro. Baltimore Football, 34 F.3d 410 (7th Cir. 1994)).

## C.  Dismissal under the "First Sale" Doctrine

In its review of Defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  The complaint need not provide "detailed factual allegations," but it must set forth the grounds for the plaintiff's entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

The parties agree that Plaintiff's claims for trademark infringement, false designation of origin and unfair competition are measured by identical standards.  See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir.

15

2000); <u>Commerce Bancorp, Inc. v. BankAtlantic</u>, 285 F. Supp.2d 475, 483 (D.N.J. 2003).  The claims require, among other things, that Defendant's use of the trademark to identify its goods or services is likely to create confusion concerning the origin of those goods or services.  <u>Id.</u>  The various kinds of trademark claims correspond to various ways that confusion might be created.  Plaintiff argues that Defendant's sale of NUTRIMED products "is likely to cause confusion and deception among customers regarding Robard's sponsorship or approval of said products."  (Compl. ¶ 20.)

Defendant argues that Plaintiff's allegations fail to state cognizable claims because of the "first sale" doctrine.  Under the doctrine, once a trademark owner makes an initial sale of its product into the stream of commerce, such sale "extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form."  <u>Iberia Foods Corp. v. Romeo</u>, 150 F.3d 298, 301 n.4 (3rd Cir. 1998); <u>Sebastian Int'l v. Longs Drug Stores Corp.</u>, 53 F.3d 1073, 1074 (9th Cir. 1995), <u>cert.</u> <u>denied</u>, 516 U.S. 914 (1995) ("Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition.")

It is true that the mere resale of genuine goods, without more, does not state a claim for trademark infringement as to

16

confusion over the product, because there is no confusion about the product if the goods sold are genuine. <u>Sebastian</u>, 53 F.3d at 1076. However, this does not mean that sellers of genuine goods are therefore immune from trademark liability. There are other kinds of confusion against which the statutes guard, and there are several varieties of cases permitting trademark claims even though the product sold is otherwise genuine. <u>See</u> <u>Australian Gold, Inc. v. Hatfield</u>, 436 F.3d 1228, 1237 (10th Cir. 2006) (reseller purchased products by deceptive means); <u>Bandag, Inc. v. Al Bolser's Tire Stores</u>, 750 F.2d 903 (Fed. Cir. 1984) (reseller suggested it was one of the producer's franchisees); <u>Stormor v. Johnson</u>, 587 F. Supp. 275 (W.D. Mich. 1984) (reseller used trademark for advertising). These latter cases involve consumer confusion other than confusion over whether the product itself is the genuine article. <u>See</u> 4 McCarthy on Trademarks and Unfair Competition § 23:5 (4th ed.) (discussing different types of actionable confusion under the statute).

Although the broad language in <u>Iberia</u> cited by Defendant appears to require allegations of material difference in any trademark action, <u>Iberia</u>, 150 F.3d at 300-04, later Third Circuit Court of Appeals decisions have recognized claims based on other kinds of confusion. <u>See, e.g.</u>, <u>McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC</u>, 511 F.3d 350, 358 (3d Cir. 2007) (citing 4 McCarthy on Trademarks and Unfair Competition § 23:5

(4th ed.)).  This suggests <u>Iberia</u>'s statement of law should not be read to foreclose confusion claims similar to those made in the <u>Australian Gold</u>, <u>Bandag</u>, and <u>Stormor</u> line of cases, claims that were not raised in <u>Iberia</u>.

Plaintiff relies heavily on a belief that Defendant's argument is an affirmative defense, arguing that because the Complaint does not state whether the products sold are genuine or not, the defense cannot be raised on a motion to dismiss.  <u>See</u> <u>Leveto v. Lapina</u>, 258 F.3d 156, 161 (3d Cir. 2001).  Whether an argument constitutes an affirmative defense or merely a required element of a claim is often unclear, especially when the elements of the claim are judicially created rather than set out in statute.  Although the first sale doctrine is widely recognized, there is no consistent treatment of it as either identifying required elements of a claim or as setting forth an affirmative defense.  District courts, sometimes within the same district, are split over the matter.  <u>Compare</u> <u>Mary Kay, Inc. v. Weber</u>, 661 F. Supp. 2d 632, 638 (N.D. Tex. 2009) (identifying first sale as affirmative defense and placing burden on defendant) <u>with</u> <u>Taylor Made Golf Co. v. MJT Consulting Group</u>, 265 F. Supp. 2d 732, 739 (N.D. Tex. 2003) (finding it not to be an affirmative defense and placing burden on plaintiff).  The Third Circuit Court of Appeals has not explicitly discussed the question.  Although <u>Iberia</u> refers to the first sale doctrine as an "affirmative defense,"

this appears to be the case only because that is how the parties had characterized it; the court revealed that it is not an affirmative defense by placing the burden of persuasion on Plaintiff to prove material difference.  See Iberia Foods Corp. v. Romeo, 150 F.3d 298, 300-04 (3d Cir. 1998) ("[Plaintiff pursuing relief under 15 U.S.C. § 1114] must establish that the products sold by the alleged infringer are not genuine.") (internal citations and quotations omitted).  This is as it must be.  It is an element of the infringement claim that the Defendant's conduct causes confusion, Commerce Bancorp, 285 F. Supp.2d at 483, which necessarily requires allegations of sale of a materially different product bearing the trademark or allegations of other conduct creating confusion as to product origin (such as creating the false impression of official authorization).

The Court must therefore determine whether the Complaint alleges facts sufficient to prove some cognizable claim of infringement in light of the first sale doctrine.  Unfortunately, in opposing the motion, Plaintiff attempts to shoehorn the claims made in the Complaint into a "material difference" claim. Consequently, the parties' briefs debate whether selling the products over the internet without tying them to a doctor's consultation constitutes a "material difference" for purposes of the first sale doctrine.  But this debate misses the point, since

19

the Court's task is to assess the sufficiency of the Complaint and the Complaint is exceedingly clear about what kind of confusion claim is at issue. Namely, confusion as to Plaintiff's connection with or sponsorship of Defendant's sale of NUTRIMED products, which is entirely distinct from the kind of claim in which "material difference" is at issue.

To the extent that Plaintiff attempts to transform its claim into one about material difference between the products sold by Plaintiff under the trademark and products sold by Defendant under the trademark, that claim is not supported by the facts in the Complaint. The Complaint makes no reference to any measures taken by Plaintiff and not taken by Defendant that would affect the form of the product reaching the customer, or that would cause the customer to expect a different product when ordering something under the NUTRIMED mark. Plaintiff appears to make a simple category error, conflating the authorized form of the product (i.e., its ingredients, packaging, etc.) with whether the sale of the product was authorized (i.e., permitting downstream pruchasers to market the product directly to customers). Plaintiff's argument is identical to the claim correctly rejected in Standard Process, Inc. v. Banks, 554 F. Supp. 2d 866 (E.D. Wis. 2008) (rejecting argument that supplements were "materially different" because they were not sold to health care professionals but instead available for direct purchase on a

20

website).  There is no allegation that customers ordering
NUTRIMED products from Defendant are expecting as part of their
order some one-on-one consultation.  Standard Process held, and
this Court agrees, that:

> when the customer makes a purchase on the internet, the
> customer does not expect that he will receive
> individualized consultation.  There is not a latent
> defect due to a failure to observe a quality control
> measure of the product itself that the customer could not
> detect.  As a result, there is no risk of customer
> confusion and, as such, [Plaintiff's] argument is
> unavailing.

Id. at 870.

Nowhere does the Complaint allege that the NUTRIMED products
are not the same products sold by Plaintiff.  Instead, the
Complaint attempts to set forth a cause of action based on
Defendant "caus[ing] the public to believe that, contrary to
fact, the dietary food supplements offered by Nagler is
authorized, sponsored or approved by Robard or that Nagler is
affiliated, connected or associated with or in some way related
to Robard." (Compl. ¶ 24.)  Unlike the claims put forward by
Plaintiff in opposing the motion, the claim contained in the
Complaint is a cognizable legal claim.  Stormor v. Johnson, 587
F. Supp. 275 (W.D. Mich. 1984) ("It is now well-settled that
trademark infringement occurs when a defendant uses the
plaintiff's trademark in a manner that suggests that the
defendant is affiliated with the plaintiff's company even though
the defendant deals in the goods of the trademark owner."). See

also <u>Volkswagenwerk Aktiengesellschaft v. Volks City, Inc.</u>, 348
F.2d 659 (3d Cir. 1965) (recognizing action based on confusion
over whether car dealer was authorized dealer of genuine
products).[2]  However, Plaintiff's Complaint fails to allege facts
sufficient to support the valid sponsorship confusion claim it
sets out to prove.

The potentially relevant allegations in the Complaint are
contained in paragraphs 18 and 19:

> Nagler commenced the promotion, advertising,
> distribution, offering for sale and sale of dietary food
> supplements bearing infringements of Robard's trademark
> NUTRIMED. . . . Upon information and belief, Nagler has
> marketed, distributed and sold, within this judicial
> district, dietary food supplements under the trademark
> NUTRIMED, through various channels of trade, including,
> among others, the DIETRESULTS.COM Web site, and is
> passing off such dietary food supplements as those
> authorized by Robard.  A true and correct copy of the
> computer screen display of said DIETRESULTS.COM Web site
> is annexed as Exhibit 2 and is made part hereof.

(Compl. ¶¶ 18-19)  The copy of the website annexed to the
Complaint shows a screen identifying various NUTRIMED products
for sale.  Mere use of the name of a product in connection with
its resale as a genuine product is not a sufficient basis for a
claim about false sponsorship or connection.  <u>NFL v. Governor of
State of Del.</u>, 435 F. Supp. 1372, 1380 (D. Del. 1977).  Something

---

[2]  This type of infringement claim is to be distinguished
from one based on the confusion that arises when distinct
products are marketed under the same trademark.  <u>See</u> <u>Champions
Golf Club v. Champions Golf Club</u>, 78 F.3d 1111 (6th Cir. 1996); 4
McCarthy on Trademarks and Unfair Competition § 23:8 (4th ed.).

more is needed to establish that customers may be confused about the affiliation.  See, e.g., Prompt Elec. Supply Co., Inc. v. Allen-Bradley Co., 492 F. Supp. 344, 349 (E.D.N.Y. 1980) ("[T]he Allen-Bradley sign stands together with the Prompt sign on Prompt's facade; the products of no other electrical parts distributor are 'advertised' on the facade of Prompt's place of business . . . The clear inference is that Prompt holds itself out as an authorized Allen-Bradley distributor and no mere seller through use of the Allen-Bradley sign on the facade of its place of business.").  In this case, the attached website cannot be read as providing a plausible basis for a claim of false affiliation.

Defendant also argues that the website contains a statement that Defendant is not an authorized distributor of NUTRIMED products.  If true, this fact would be relevant, but on this procedural posture the Court is only examining the sufficiency of the Complaint's allegations, and in any case, the point is moot because even without the disclaimer Plaintiff fails to state a claim.

Nothing in Plaintiff's Complaint or the attached website of Defendant suggests that Defendant has done anything more than identify genuine NUTRIMED products by name on the website, among other products, and sell genuine NUTRIMED products to willing buyers.  Without more, this allegation does not state a claim for

23

trademark infringement, false designation of origin or unfair competition; that the Complaint contains such conclusory labels is not sufficient without setting forth a plausible factual basis.  <u>Twombly</u>, 550 U.S. at 555.  The Court will therefore grant the motion to dismiss, but do so without prejudice to Plaintiff filing an amended complaint to supplement it with any allegations that would, consistent with this Opinion, state a claim.  <u>See</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").  The Court is not persuaded at this stage that such amendment would be futile.  It may be that because of Plaintiff's belief that the first sale doctrine constitutes an affirmative defense, Plaintiff was unaware of the need to plead certain facts necessary to state a claim.  Plaintiff will be granted the opportunity to file for leave to amend within 14 days.  If a timely motion to amend is not forthcoming, then the dismissal will be with prejudice.

**IV.  CONCLUSION**

The Court's exercise of personal jurisdiction is proper because of the nature of Defendant's contacts with this forum, and a change of venue is unwarranted.  However, Plaintiff's

Complaint fails to state a claim upon which relief may be granted, and it will be dismissed without prejudice.  Plaintiff may file a motion for leave to amend the Complaint to cure the defect within fourteen (14) days, if it can do so consistent with this Opinion.  The accompanying Order will be entered.


__**March 22, 2010**__            __**s/ Jerome B. Simandle**__
Date                             JEROME B. SIMANDLE
                                 United States District Judge

25