IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FOOD SCIENCES CORPORATION d/b/a ROBARD CORPORATION, | : | HON. JEROME B. SIMANDLE |
| | : | |
| Plaintiff, | : | Civil No. 09-1798 (JBS/KMW) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WILLIAM M. NAGLER, | : | |
| | : | |
| Defendant. | : | |

APPEARANCES:

Salvatore Guerriero, Esq.
Manny D. Pokotilow, Esq.
CAESAR, RIVISE, BERNSTEIN, COHEN & POKOTILOW, LTD.
12th Floor - Seven Penn Center
1635 Market Street
Philadelphia, PA 19103
     Attorneys for Plaintiff

William D. Sanders, Esq.
Patrick M. Beattie, Esq.
MCGIVNEY & KLUGER, P.C.
23 Vreeland Road
Suite 220
Florham Park, NJ 07932

     -and-

William H. Horton, Esq.
Elizabeth A. Favaro, Esq.
GIARMARCO, MULLINS & HORTON, P.C.
101 West Big Beaver Road
10th Floor - Columbia Center
Troy, MI 48084
     Attorneys for Defendant

**SIMANDLE,** District Judge:

## I.  INTRODUCTION

This matter is before the Court on Plaintiff's motion to file an amended complaint in response to this Court's earlier dismissal of the Complaint for failure to state a claim [Docket Item 43].  The principal issue is whether the proposed amended complaint is futile, which turns on whether a reasonable fact-finder could conclude that the way Defendant's website displays and sells NUTRIMED products is likely to confuse consumers about Defendant's affiliation with Plaintiff, given that Defendant was at one time an authorized distributor of NUTRIMED products.

## II.  BACKGROUND

Food Sciences Corporation, doing business as Robard Corporation, brings this lawsuit against Dr. William M. Nagler based on Dr. Nagler's practice of selling NUTRIMED dietary food supplements through his website without Robard's authorization. Robard alleges that Dr. Nagler was formerly an authorized distributor of its NUTRIMED products, but that this relationship was terminated in part because of Dr. Nagler's insistence on selling NUTRIMED products over the internet, which Robard does not permit.  (Am. Compl. ¶¶ 23-25.)  Robard contends that Dr. Nagler's post-termination online sale of NUTRIMED products as "Dr. Nagler's Diet Foods" creates consumer confusion over whether

2

Dr. Nagler is still an authorized distributor of the products. (Id. ¶ 28.)  At some point after February 9, 2009, Dr. Nagler added a disclaimer telling customers that he is not sponsored by or affiliated with Robard.  (Am. Compl. ¶ 29.)  Robard contends that both the pre- and post-disclaimer version of the website caused sponsorship confusion, giving Robard causes of action under 15 U.S.C. § 1114(1) (trademark infringement), § 1125(a) (false designation of origin), and unfair competition under New Jersey law.

This Court's March 22, 2010 Opinion dismissed the Complaint as originally pleaded because it only alleged that Dr. Nagler identified and sold genuine NUTRIMED products by name on Dr. Nagler's website, which without more does not state a claim for sponsorship confusion.[1]  [Docket Item 41 at 22-24.]  The Court permitted Robard to propose an amended complaint that would add the allegations necessary to state a claim for sponsorship confusion.

The amendments proposed by the present motion add allegations regarding the nature of Robard's distribution system and Dr. Nagler's former participation in it, as well as

---

[1]  See Iberia Foods Corp. v. Romeo, 150 F.3d 298, 301 n.4 (3rd Cir. 1998); Sebastian Int'l v. Longs Drug Stores Corp., 53 F.3d 1073, 1074 (9th Cir. 1995), cert. denied, 516 U.S. 914 (1995) ("Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition.")

allegations regarding Dr. Nagler's website and how it causes sponsorship confusion.  As explained below, the Court will permit Robard to amend the Complaint, but will reject as futile those claims related to the post-disclaimer website.

## III.  DISCUSSION

### A.  Standard of Review

#### 1.  Motion to Amend

Rule 15(a)(2) provides that leave to amend should be freely given when justice so requires.  Fed. R. Civ. P.  The decision to permit amendment is discretionary.  Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 144 n. 10 (3d Cir. 2009).  Among the legitimate reasons to deny a motion to amend is the futility of the proposed amendments.  Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (citation omitted).  Futility is determined by the standard of legal sufficiency set forth in Rule 12(b)(6), Fed. R. Civ. P.  In re Burlington Coat Factory Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997).  Accordingly, an amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted.  Id.

Dr. Nagler maintains that the proposed amended complaint is futile, because it still does not contain sufficient factual allegations to state a plausible claim of sponsorship confusion.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57 (2007)

4

(explaining need for plausible grounds to support ultimate
conclusions).  In assessing whether the Complaint is futile, the
Court will "accept all factual allegations as true and construe
the complaint in the light most favorable to the plaintiff."
Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)
(quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d
Cir. 2002)).

2.  Likelihood of Confusion and Futility

The parties agree that Robard's claims for trademark
infringement, false designation of origin and unfair competition
are measured by identical standards.  See A & H Sportswear, Inc.
v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir.
2000).  The Lanham Act provides that any person who in commerce
makes any representation that "is likely to cause confusion, or
to cause mistake, or to deceive as to the affiliation,
connection, or association of such person with another person, or
as to the origin, sponsorship, or approval of his or her goods,
services, or commercial activities by another person" shall be
liable to any person damaged by such action.  15 U.S.C. §
1125(a)(1)(A).  The touchstone of any trademark claim, including
a sponsorship confusion claim, is whether there is a likelihood
of confusion.

Robard argues that likelihood of confusion cannot ever be

the subject of a motion to dismiss under Rule 12(b)(6) (or opposition to a motion to amend, as in this case) because the analysis is fact-laden.  But Robard's position is an overstatement of the true principle, which is that such fact-laden issues will rarely be appropriate for adjudication on a motion to dismiss.  See Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006) ("The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss.").  When there are disputed facts, the Court cannot resolve the dispute on a motion to dismiss.  And the Court does not inquire into the strength of Robard's evidence at this stage.  But a trademark claim, like any claim, is subject to dismissal when even the factual allegations do not amount to a violation of Robard's legal interests.  It is not sufficient, as Robard suggests, to merely identify a cause of action that might relate to the subject matter of the complaint; a complaint's factual allegations must present a plausible basis for relief under that cause of action.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).

Whether a particular action taken by an unauthorized reseller in a particular context is likely to cause sponsorship confusion is a question of fact.  However, identifying a claim as turning on an issue of fact does not necessarily protect it from

dismissal on a Rule 12(b)(6) motion.  This is because when an element of a claim involves some abstract fact, including those dealing with mental states such as questions of intent or likelihood of confusion, the factual conclusion cannot simply be asserted in the complaint, but must be sufficiently grounded in more concrete factual allegations.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009) (discussing the conclusory nature of allegations regarding general mental states).  And if the conclusion is not a reasonable inference from the alleged facts, it may be disregarded.  Id.; see GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 210 (3d Cir. 2001) ("[A] court is required to indulge only reasonable inferences.").  The Court does not credit conclusory allegations of ultimate facts in determining whether the Complaint states a claim.

Where the inference of a likelihood of consumer confusion is not plausible from the facts alleged, such that no reasonable fact-finder could find a likelihood of confusion, then dismissal is appropriate.  This was so even under the older "no set of facts" pleading doctrine.  See Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 790-91 (9th Cir. 1981) (dismissing claim that Godzilla trademark was infringed by marketing and sale of Bagzilla, a brand of trash bag); Qwest Commc'ns Int'l v. Cyber-Quest, Inc., 124 F. Supp. 2d 297, 304 (M.D. Pa. 2000) (stating that a motion to dismiss a trademark infringement claim

may be granted if "no reasonable factfinder could find a likelihood of confusion on any set of facts that plaintiff could prove"); <u>First American Marketing Corp. v. Canella</u>, No. Civ.A. 03-CV-812, 2004 WL 250537, at *4 (E.D. Pa. 2004).

Likelihood of confusion is an issue well-suited for screening at the motion to dismiss stage.  This is not an area of law in which plaintiffs face information asymmetries such that even viable claims will be lacking in critical information before discovery.  On the contrary, by its nature, a trademark claim turns on facts known to a plaintiff because it requires a showing that the public is likely to be deceived by the public conduct of the defendant toward the plaintiff's own mark.

Dismissal of a sponsorship confusion claim is appropriate when the inference of a likelihood of confusion is so implausible based on the facts alleged that no reasonable fact-finder could credit it.  The Court therefore considers whether a reasonable fact-finder could infer a likelihood of confusion based on the facts (and reasonable inferences therefrom) alleged in the proposed amended complaint for both the pre- and post-disclaimer websites.

### B.  Likelihood of Confusion

The assessment of likelihood of confusion in a sponsorship confusion claim differs from that assessment for infringing marks

8

in two ways:  the defendant must take some action that causes confusion beyond displaying and selling the product, and only some of the ordinary factors for assessing that confusion will be applicable.

       1.  <u>Action Beyond Unauthorized Sale</u>

"[A] purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." <u>Sebastian Intern., Inc. v. Longs Drug Stores Corp.</u>, 53 F.3d 1073 (9th Cir. 1995); <u>see also</u> <u>NFL v. Governor of State of Del.</u>, 435 F. Supp. 1372, 1380 (D. Del. 1977).  Thus, it is a requirement for the claim that some action taken by the defendant beyond merely stocking and reselling misleads the consumer into believing the defendant is an authorized seller of the product or sponsored by the company owning the trademark.  <u>See</u> <u>Volkswagenwerk Aktiengesellschaft v. Volks City, Inc.</u>, 348 F.2d 659 (3d Cir. 1965); <u>Stormor v. Johnson</u>, 587 F. Supp. 275, 278 (W.D. Mich. 1984) ("It is now well-settled that trademark infringement occurs when a defendant uses the plaintiff's trademark in a manner that suggests that the defendant is affiliated with the plaintiff's company even though the defendant deals in the goods of the trademark owner.").  Courts have found sponsorship confusion where a reseller advertises the product in

9

such a way as to suggest it is an authorized distributer, such as by placing the trademark prominently on signage or in advertising to the exclusion of other trademarks or products, see Prompt Elec. Supply Co., Inc. v. Allen-Bradley Co., 492 F. Supp. 344, 349 (E.D.N.Y. 1980), or otherwise suggesting affiliation by the nature of the advertisement.  See Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 911 (Fed. Cir. 1984).

It may be that certain circumstances mean that even the slightest suggestion of affiliation will be sufficient to confuse consumers, but there must still be some action on the part of Defendant that suggests affiliation other than the mere sale of the product.  Robard implicitly challenges this point, arguing that with some products nothing more is necessary than mere resale because confusion over sponsorship is so inherently likely as to make any unauthorized sale an infringement.  This position is not supported by the precedent cited by Robard and contradicts the longstanding doctrine protecting the mere unauthorized sale of genuine trademarked products.  See Sebastian, 53 F.3d 1073 (9th Cir. 1995).  Robard cites Fender Musical Instruments Corp. v. Unlimited Music Ctr., 35 U.S.P.Q.2d 1053, 1056-57 (D. Conn. 1995) in support of its argument.  That case involved three stores that buy, sell and trade used Fender guitars as well as "new" Fender guitars illegally imported from Japan, without being authorized by Fender.  Id. at 1054.  The Court found that the

defendant used an indistinguishable business model, marketed the guitars in the same channels of commerce using the trademark, and admitted "that their actions were likely to deceive the public into believing that Unlimited was an authorized dealer." Id. at 1056.  The Court also made a finding similar to what Robard urges in this case:

> The class of goods and services in question, i.e. the sale of Fender guitars, are of such nature that because of the well established reputation of Fender products, customers expect that the dealers themselves must have a certain respectability in order to be authorized by the Fender Musical Company. Because new Fender guitars are unique and highly regarded, an unauthorized seller of "new" Fender guitars would deceive the customer into believing that the dealer met the qualifications of an authorized dealer.

Id. at 1056-57.  It is not clear that the Court was saying that unauthorized sale of Fender guitars is inherently infringing, as opposed to explaining why confusion over authorization would be injurious to plaintiff in that case.  But even if the Fender court had found that the unique nature of Fender guitars supported a finding of confusion, it was certainly not holding that this factor alone was sufficient, having identified many other factors supporting confusion.  This Court is not persuaded that the existence of a close network of authorized distributors is sufficient to make any unauthorized sale an infringing sale.

Similarly, Robard contends that in the context of a formerly

11

authorized distributor, any sale of the product without explicit disclaimer is infringement. There is precedent suggesting that when certain franchise relationships are terminated, such as a Holiday Inn or Burger King, the franchise location must affirmatively disassociate itself with the former franchisor. See, e.g., Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983) ("A patron of a restaurant adorned with the Burger King trademarks undoubtedly would believe that BKC endorses the operation of the restaurant."). But these cases are talking about the use of trademarks on advertising and signage in the way that, even absent a previous relationship, would tend to cause sponsorship confusion. And these franchise cases involved continued use of the trademark to sell other products, rather than use of the trademark to sell the trademarked product. Of course a Burger King or Holiday Inn must take down the former franchisor's signage on the front of the business; it does not follow that a formerly authorized dealer of genuine products cannot continue to display and sell those products, listing them as among others offered.

While the facts of a network of qualified distributors and Dr. Nagler's former participation in that network do not themselves create a basis for trademark liability upon the mere stocking and resale of a product, they do place a higher burden on Dr. Nagler to avoid any action that would suggest a

12

relationship between Dr. Nagler and Robard where none exists.  In these circumstances, an unauthorized distributor must take extra caution in using the trademark in any way other than to label the product as required by law.

## 2.  Factors for Assessing Sponsorship Confusion

The other difference between a sponsorship confusion claim and a mark infringement claim involves the factors used to assess likelihood of confusion.  When a trademark claim is brought based on an allegedly infringing mark, courts in the Third Circuit apply a multi-factored test to determine likelihood of confusion. See, e.g., Sabinsa Corp. v. Creative Compounds, LLC, 609 F.3d 175, 182 (3d Cir. 2010).  Some of the factors in the test articulated by the Third Circuit Court of Appeals are self-evidently inapposite to a claim of sponsorship confusion, as distinct from mark confusion.  Id. (assessing "the degree of similarity between the owner's mark and the alleged infringing mark," "the strength of the owner's mark," and "the relationship of the goods in the minds of consumers because of similarity of functions").  The Federal Circuit Court of Appeals has identified the relevant factors from their similar likelihood of confusion test to assess whether a given set of facts create a likelihood of sponsorship confusion.  See Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903, 912 (Fed. Cir. 1984) (assessing "the

13

similarity between the practices at issue and those of authorized users; the class of goods or services in question; the marketing channels involved; evidence of actual confusion; and evidence of the intention of the defendant in engaging in the activity of which plaintiff complains.").

Since Robard also urges that the Amended Complaint be examined in light of these Bandag factors, the Court will examine and weigh those factors in order to determine whether the facts alleged in the Complaint state a plausible case for a likelihood of confusion.  As discussed above, Robard must allege that Dr. Nagler took some affirmative step to mislead customers.  See Stormor, 587 F. Supp. at 278.  The analysis of the factors must therefore examine the alleged actions that Dr. Nagler took beyond merely reselling the product that make him appear to be a like an authorized distributor, in light of the background circumstances of his previous authorization.  The Court will begin by examining whether a reasonable fact-finder could find a likelihood of confusion based on the facts alleged about the pre-disclaimer site, and then examine whether the differences presented by the post-disclaimer site change the analysis.

a. Similarity of Practices

According to the proposed amended complaint, the sole action allegedly taken by Dr. Nagler to suggest an affiliation

14

with Robard involves the structure of Dr. Nagler's website and
statements made on it.  Robard contends that Dr. Nagler's website
makes Dr. Nagler seem like an authorized dealer by using
possessive language with respect to NUTRIMED products, and by
listing NUTRIMED on the home page.[2]  The "Nutrimed 500 Puddings
and Shakes" being offered by Nagler, were listed under the
possessive heading "Dr. Nagler's Diet Foods," which Robard
contends indicates to the consuming public that Nagler was
sponsored or authorized by or affiliated or associated with the
source of NUTRIMED.  Robard also points out that the website
refers to "NUTRIMED products from Dr. Nagler."  And the only
product that is not Dr. Nagler's private label listed on the home
page of the website is NUTRIMED, though a number of other brand
name products are listed on the page with the heading "Dr.
Nagler's Diet Foods."  (Am. Compl. Ex. 2.)

     The conclusion that consumers would likely be confused by
this language is not especially compelling.  According to the
proposed amended complaint, Dr. Nagler is a doctor specializing
in weight loss medicine who was previously an authorized
distributor of NUTRIMED products.  He therefore fits the profile

---

     [2]  Dr. Nagler argues that the Court has already determined
that no part of the website supports a claim for sponsorship
confusion.  This was not the Court's holding in the March 22,
2010 Opinion, which was that the excerpt of the website attached
to the previous complaint, in the absence of more specific
allegations about how that website was misleading, was
insufficient to state a claim.  [Docket Item 41 at 22-23.]

of an authorized distributor.  However, Robard also alleges that authorized distributors never sell their products on the internet and authorized distributors only sell the products as part of a nutritional program.  (Am. Compl. ¶¶ 16-17.)  More importantly, the language itself just is not that suggestive.  Robard relies on Standard Process Inc. v. Total Health Discount Inc., 559 F Supp. 2d 932 (E.D. Wisc. 2008) for the proposition that use of possessive language to describe a product suggests sponsorship, but Robard misreads that case.  In Standard Process, the district court noted as one source of sponsorship confusion that "Total Health admit[ted] that it use[d] 'we' or 'our' statements in connection with six product descriptions of Standard Process products."  Id. at 938.  The relevant fact was the use of first-person plural possessives, which invite the reader to view the speaker as part of a larger affiliated group; use of a first-person singular possessive related to the product draws no such implicit association.  Indeed, in Standard Process, the language was quite clearly designed to evoke an impression of association, by "referring to Standard Process's 75th anniversary and describing its accomplishments using first-person pronouns 'we' and 'our' to refer to Standard Process."  Id.

    Although the inference is a weak one, in light of Dr. Nagler's previous association with Robard, it is not the case that no reasonable fact-finder could conclude that this language

16

suggests that Dr. Nagler continued to be a sponsored distributor. Giving Plaintiff all reasonable inferences from the facts alleged in the proposed amended complaint, a reasonable fact-finder could conceivably conclude that the listing of NUTRIMED products as somehow belonging to Dr. Nagler, and especially having NUTRIMED as the sole brand-name product listed on the home page as well as the fact of prior affiliation as an authorized distributor, suggests some continuing affiliation with Robard.  See Prompt Elec. Supply Co., Inc. v. Allen-Bradley Co., 492 F. Supp. 344, 349 (E.D.N.Y. 1980) ("[T]he products of no other electrical parts distributor are 'advertised' on the facade of Prompt's place of business . . . The clear inference is that Prompt holds itself out as an authorized Allen-Bradley distributor and no mere seller through use of the Allen-Bradley sign on the facade of its place of business.")

### b. Class of Goods

In the context of mark infringement, this factor is used to determine whether consumers might associate the two different products based on whether they are in the same class of goods. See Toho Co., Ltd. v. Sears, Roebuck & Co., 645 F.2d 788, 790-91 (9th Cir. 1981) (dismissing claim that Godzilla trademark was infringed by marketing and sale of Bagzilla, a brand of trash bag).  In the context of sponsorship confusion, the question is

whether the product or service provided by an authorized dealer differs materially from that of an unauthorized dealer; in this context, the factor substantially overlaps with the "similarity of practices" factor.  See Bandag, 750 F.2d at 914 (comparing sale of tire caps with tire re-treading services, both offered under the same trademark).  This application of the factor is largely inconclusive in this case.  On one hand, both Dr. Nagler and authorized distributors of NUTRIMED bars are selling a dietary health product; on the other, there is some difference between marketing and selling the NUTRIMED bars as part of an in-person dietary program (in which consumers expect the doctors to be authorized), and selling them online, not necessarily part of any dietary program.

Viewing the factor a different way, there are also potentially some classes of goods for which customers more readily expect distributors to be authorized.  It is plausible that, unlike a can of soda, for example, a specialized nutritional product is more likely than other goods to be associated with an authorized network of distributors and a dietary program.  But under either application of this factor, the Court finds nothing that strongly supports or undermines a likelihood of confusion.

c. Marketing Channels

18

Robard concedes that the marketing of the products in this case involves two dissimilar channels, internet sales and in-person sales as part of a nutritional program.  Robard argues that the customer base is the same, however, and that this similarity supports the likelihood of confusion.

As with many of the other factors in the context of a sponsorship confusion claim, an overlapping customer base will be present in virtually every such claim because identical products will almost always have an overlapping customer base.  In the context of confusingly similar marks, different marketing strategies do not necessarily undermine a finding of consumer confusion that was based on other factors.  See Dieter v. B & H Industries, Inc., 880 F.2d 322, 326-27 (11th Cir. 1989) ("This Court is not convinced that the difference between the retail strategies of Dieter and B & H is so great as to preclude confusion.").  That's because consumers may simply believe the same product is being marketed in two different channels.  See id.  The same reasoning may apply to sponsorship confusion, in that consumers may believe that different kinds of distributors are all authorized, but it is not a factor supporting confusion — instead it is an explanation for why the existence of divergent marketing channels is not always fatal to a claim.  At best, this factor is neutral and will require greater factual elaboration in due course.

d. <u>Actual Confusion</u>

Robard does not plead any allegations suggestive of actual confusion.  The lack of such allegations is not dispositive, but this factor does not weigh in favor of a likelihood of confusion. <u>See</u> <u>Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.</u>, 269 F.3d 270, 291 (3d Cir. 2001).


e. <u>Intention to Mislead Consumers</u>

Robard argues that Dr. Nagler demonstrated an intention to mislead consumers by falsely representing to Robard, while he was an authorized dealer, that he would comply with Robard's requests to refrain from marketing NUTRIMED via the Internet. (<u>See</u> Am. Compl. ¶¶ 23-25.)  Robard asks the Court to infer that Dr. Nagler had an intention to mislead consumers based on this conduct.  Whatever Dr. Nagler's motivation for the alleged misrepresentation, the one motivation that is completely implausible is a desire to mislead consumers about his affiliation with Robard, because Robard asked Dr. Nagler to refrain from the sales while he was still an authorized dealer. It is therefore not reasonable to infer that Dr. Nagler's representation that he would comply suggests an intention to mislead consumers about Dr. Nagler's authorization.

20

f.  <u>Totality of Factors</u>

The alleged facts supporting consumer confusion must be considered as a whole.  Here, the allegations regarding confusion-inducing actions on the part of Dr. Nagler are thin. Dr. Nagler has not used the NUTRIMED mark other than to label the products he has for sale on his website, except to the extent that he lists it on the home page of the website.  That latter fact and Dr. Nagler's use of the phrase "Dr. Nagler's Diet Foods" as a heading to describe all of the various name-brand and private-label products sold by Dr. Nagler are the only causes of confusion that Robard can allege.[3]

As to the likelihood that these acts caused confusion based on the <u>Bandag</u> factors, there is no allegation of actual confusion or reasonable inference of an intention to mislead in this case,

---

[3]  In support of no factor in particular, Robard alleges, "On information and belief, since December 2006, Nagler has obtained NUTRIMED products in violation of Robard's relationship with its authorized distributors, through means that are inappropriate and contrary to honest, industrial and commercial practice."  (<u>Id.</u> ¶ 26.)  There is no indication of what this means beyond the conclusory allegation, and Robard does not explain the allegation in its motion briefing, nor does Robard explain why this conclusion would be relevant to a sponsorship confusion claim (as distinct from a claim regarding confusing marks or grey market goods).  In this case, if the goods were obtained because some other party breached a contract with Plaintiff, it is unclear why that is relevant to Plaintiff's sponsorship confusion claim.  Perhaps Robard means to allege that Dr. Nagler is interfering with its contractual rights with Robard's distributors, but the proposed amended complaint does not so aver.  Given the entirely conclusory and general nature of the allegation, the Court finds that it does not support the plausibility of the claim.

and the marketing and distribution methods for the product between Dr. Nagler and authorized dealers are dissimilar.

Nevertheless, Dr. Nagler's website exists in the context of Dr. Nagler being a formerly authorized distributor in what Robard alleges to be a network of qualified distributors closely associated with the product.  It may be that Robard is unlikely to succeed in persuading a fact-finder that consumers would be confused by the language of the website.  Likelihood of success, however, is not a requirement that Plaintiff must meet to show that a proposed amendment is not futile; Plaintiff only needs to make a showing that success is "plausible," as discussed above. But the Court cannot find that no reasonable fact-finder could conclude that there is a likelihood of confusion created by the way Dr. Nagler chooses to display and sell the products on his website, including having a link to NUTRIMED and no other brand-name product on the home page of the site.  Consequently, as to the pre-disclaimer website, the motion to amend the Complaint will be granted.

3.  Futility of Post-Disclaimer Claims

At some point, Dr. Nagler added a disclaimer to the website explicitly disavowing any affiliation with Robard.  The disclaimer, stating "We are not an authorized distributor of Nutrimed," is placed in the same size font as secondary product

22

descriptions under each place on the website where a consumer must click to order NUTRIMED products.  (Am. Compl. ¶ 29.)  In the Court's experience, this is an unusually prominent disclaimer.  Given the knife's edge upon which the claims regarding the pre-disclaimer website teeter, the Court easily concludes that no reasonable fact-finder could find a likelihood of confusion as to the post-disclaimer version of the website.

## IV.  CONCLUSION

This is a case in which Defendant has allegedly done very little to potentially confuse consumers beyond simply stocking, displaying, and reselling a genuine product.  However, it is also a case in which such confusion would be easy to induce, given the circumstances of Dr. Nagler's previous association with Robard, his status as a weight loss doctor, and the way in which NUTRIMED products are normally distributed.  Consequently, the Court is reluctant to declare the proposed amended complaint to be futile, even though it rests on weak inferences drawn from the language and structure of Dr. Nagler's website and Dr. Nagler's prior status as an authorized NUTRIMED distributor.

The Court is not yet prepared to conclude that no reasonable fact-finder could find a likelihood of confusion based on the pre-disclaimer website, but does find that no reasonable fact-finder could believe the post-disclaimer website is likely to be

confusing under the circumstances alleged in the proposed amended complaint.  Plaintiff will be permitted to amend the Complaint as to the pre-disclaimer conduct, but the claims regarding the post-disclaimer website are futile and will not be permitted.

The accompanying Order will be entered.


**October 20, 2010**                         **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge


24